Appeal No. 2013-1104
(Serial No. 11/145,716)

UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT
_____

IN RE KEVIN P. EATON

_____

Appeal from the United States Patent and Trademark Office,
Patent Trial and Appeal Board.
_____

BRIEF FOR APPELLEE – ACTING DIRECTOR OF THE
UNITED STATES PATENT AND TRADEMARK OFFICE

NATHAN K. KELLEY
Deputy Solicitor

MARY L. KELLY
JOSEPH G. PICCOLO
Associate Solicitors

Mail Stop 8
P.O. Box 1450
Alexandria, VA  22313-1450
(571) 272-9035

*Attorneys for the Acting Director of
the United States Patent and
Trademark Office*

June 4, 2013

# TABLE OF CONTENTS

**Page**

I.  STATEMENT OF THE ISSUES .............................................................1

II. STATEMENT OF THE CASE ..............................................................2

III. STATEMENT OF THE FACTS ............................................................3

    A.    Eaton's methods of treating psoriasis with a vitamin supplement ........3

    B.    Prior art vitamin supplements for treating psoriasis ....................5

        1.    Jungkeit ......................................................6

        2.    Mantynen ...................................................7

    C.    The Board's decisions ..................................................8

IV. SUMMARY OF THE ARGUMENT ....................................................10

V.  ARGUMENT ......................................................................12

    A.    The standard of review ................................................12

    B.    Substantial evidence supports the Board's findings underlying its determination that Jungkeit and Mantynen anticipate or would have rendered obvious the claims on appeal ..............................13

        1.    The vitamin supplement of claim 1 permits anti-oxidants in amounts that do not interfere with the supplement's ability to treat psoriasis ...........................14

**Page**

    2.     Jungkeit and Mantynen each teach the effective
         treatment of psoriasis with a vitamin supplement
         containing folic acid, vitamin $B_{12}$, and vitamin $B_6$......................17

VI.   C ONCLUSION ............................................................................................21

## TABLE OF AUTHORITIES

**Cases**                                                                **Page**

*Am. Acad. of Sci. Tech Ctr., In re*, 367 F.3d 1359 (Fed. Cir. 2004) ............................ 12

*Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313 (Fed. Cir. 2003) .......... 9

*Aventis Pharma, S.A. v. Hospira, Inc.*, 675 F.3d 1324 (Fed. Cir. 2012) ............... 13, 14

*Becton Dickinson and Co. v. C.R. Bard Inc.*, 922 F.2d 792 (Fed. Cir. 1990) .......... 14

*Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938) ............................................... 12, 13

*Gartside, In re*, 203 F.3d 1305 (Fed. Cir. 2000) .................................................... 12, 13

*Glaxo Group Ltd. v. Ranbaxy Pharm. Inc.*,
  262 F.3d 1333 (Fed. Cir. 2001) ................................................................................ 16

*Hyatt, In re*, 211 F.3d 1367 (Fed. Cir. 2000) ................................................................ 12

*ICON Health & Fitness, Inc., In re*, 496 F.3d 1374 (Fed. Cir. 2007) ................... 12, 17

*Jolley, In re*, 308 F.3d 1317 (Fed. Cir. 2002) .............................................................. 13

*Kotzab, In re*, 217 F.3d 1365 (Fed. Cir. 2000) ............................................................ 13

*Marosi, In re*, 710 F.2d 799 (Fed. Cir. 1983) ............................................................. 16

*Para-Ordnance Mfg., Inc. v. SGS Importers Int'l, Inc.*,
  73 F.3d 1085 (Fed. Cir. 1995) .................................................................................. 12

*Rapoport v. Dement*, 254 F.3d 1053 (Fed. Cir. 2001) ................................................ 12

*Schreiber, In re*, 128 F.3d 1473 (Fed. Cir. 1997) ...................................................... 13

*Thrift, In re*, 298 F.3d 1357 (Fed. Cir. 2002) ............................................................. 12

iii

**Page**

*Upsher-Smith Labs., Inc. v. Pamlab, LLC*,
  412 F.3d 1319 (Fed. Cir. 2005) ...................................................17, 18

*Watts*, *In re*, 354 F.3d 1362 (Fed. Cir. 2004) ...................................12, 20

## Statutes & Regulations

35 U.S.C. § 102(b) ...........................................................................2, 5

35 U.S.C. § 102(e) ...........................................................................2, 5

35 U.S.C. § 103(a) ......................................................................2, 5, 13

37 C.F.R. § 1.132 ...............................................................................17

## STATEMENT OF RELATED CASES

Kevin P. Eaton ("Eaton") appeals from a decision of the Patent Trial and Appeal Board ("Board") for the United States Patent and Trademark Office ("USPTO") in the examination of his patent application:  U.S. Serial No. 11/145,716 ("Eaton's application").  The Acting Director is unaware of any other appeal from the Board that has previously been or is currently pending before this Court.

.

# I.   STATEMENT OF THE ISSUES

Eaton appeals from a Board decision affirming the rejection of his patent claims for anticipation or obviousness.  Eaton claims a method for treating psoriasis by administering a vitamin supplement containing folic acid, vitamin $B_{12}$, and vitamin $B_6$ that is "essentially free of anti-oxidants."  Eaton's specification defines "essentially free of anti-oxidants" as "not contain[ing] an amount of antioxidants which would tend to damage and inactivate some of the vitamin $B_{12}$ and/or folic acid," but teaches that "lower amounts of antioxidants would not render the vitamin composition of the present invention ineffective or of reduced effectiveness."  Eaton's specification also gives vitamin C as an example of an antioxidant to be avoided, however, it does not define the amount of vitamin C necessary to reduce the effectiveness of the vitamin supplement used in the claimed method.  Based on this definition and other teachings in Eaton's specification, the Board construed the phrase "essentially free of anti-oxidants" as permitting vitamin C and other antioxidants (such as vitamin C) in amounts that would not render the vitamin supplement of the claimed method ineffective.

The Board affirmed the rejection of Eaton's method over Jungkeit's and Mantynen's earlier disclosures of the successful treatment of psoriasis in patients with a vitamin supplement containing folic acid, vitamin $B_{12}$, and vitamin $B_6$ in the claimed amounts along with vitamins C or E, respectively.

In his brief, Eaton asks this Court to consider:

(1)  whether the Board's construction of the phrase "essentially free of anti-oxidants" is reasonable; and

(2)  whether substantial evidence supports the Board's findings underlying its determination that the cited prior art anticipates or would have rendered obvious the method of claim 1 and its dependents.

Eaton has waived any challenge to the rejection of claim 11 and its dependents by failing to raise the same in his opening brief.

## II.    STATEMENT OF THE CASE

This appeal arises out of the examination of U.S. Serial No. 11/145,716 (A283-A292[1]).  The Examiner rejected Eaton's claims under 35 U.S.C. §§ 102(b), 102(e), and 103(a) as anticipated by or obvious in view of various prior art references, of which the following are most relevant to this appeal:  DE Patent No. 10053155 A1 ("Jungkeit"; A298-A305); and U.S. Patent No. 6,107,349 ("Mantynen"; A322-A326).  (*See*, *e.g.*, A64-A72, *see also* A8.)  The Board affirmed the Examiner's rejections on each statutory ground, and maintained its affirmance on request for rehearing.  (A5, A10.)  Eaton now appeals the Board's decision to this Court.

---

[1]  Citations to Appellant's Brief will be referred to as "Br. at __," citations to the Joint Appendix as "A__."

### III.   STATEMENT OF THE FACTS

**A.    Eaton's methods of treating psoriasis with a vitamin supplement**

Eaton's application concerns the treatment of dermatological conditions, including psoriasis, dermatitis, and dandruff, using a multivitamin supplement containing B-complex vitamins.  (*See* A284, ll.10-13.)  Independent claim 1 reads as follows:

> 1.    A method of treating psoriasis by administering to a person a **vitamin supplement** composition comprising
>
> at least about 25 micrograms to about 2,200 micrograms of **folic acid**,
>
> at least about 25 micrograms to about 2,500 micrograms of **vitamin B$_{12}$**, and
>
> at least about 0.5 milligrams to about 20 milligrams of **vitamin B$_6$**,
>
> wherein said composition is **essentially free of anti-oxidants**.

(A87; A8 (emphasis added).)  Thus, the method of representative claim 1 involves treating a psoriatic patient with a vitamin supplement that contains (1) 25-2,200 micrograms ("mcg" or "µg") folic acid (a.k.a. vitamin B$_9$); (2) 25-2,500 µg vitamin B$_{12}$; and (3) 0.5-20 milligrams ("mg") vitamin B$_6$; and (4) "is essentially free of anti-oxidants."

Eaton's specification expressly defines the phrase "essentially free of anti-oxidants" in functional terms, as meaning that the claimed vitamin composition "should not contain an amount of antioxidants which would tend to damage or inactivate some of the vitamin $B_{12}$ and/or folic acid of the vitamin supplement":

> By "**essentially free**" it is **meant** that the vitamin composition **should not contain an amount** of antioxidants **which would** tend to **damage and inactivate** some of the **vitamin $B_{12}$ and/or folic acid** of the vitamin supplement.  The presence of **lower amounts** of antioxidants **would not render** the vitamin composition of the present invention **ineffective** or of reduced effectiveness.

(A286, at ll.6-10 (emphasis added).)  Thus, Eaton's specification teaches that "lower amounts" of antioxidants are permitted, so long as the antioxidant is present in an amount that "would not render the vitamin composition of the present invention ineffective or of reduced effectiveness."  (A286, at ll.8-10.)  Eaton's specification, however, does not disclose any particular amount or range of anti-oxidants to be avoided.

For example, Eaton's specification states that vitamin C is an antioxidant to be especially avoided, but also provides that antioxidants including vitamin C "may be present during the preparation of [the vitamin supplement of the claimed method] provided that they are removed afterward, either completely or at least to the level that they virtually have no effect on [it]":

4

> In the case of a vitamin supplement compound that is essentially free of antioxidants, among the antioxidants especially to be avoided is added vitamin C, and no antioxidants of any kind should be added to any of the compounds disclosed herein (although such **antioxidants may be present** during the preparation of such vitamins provided that they are removed afterward, either completely or at least **to a level where they have virtually no effect on the vitamin components of the present invention**).

(A288, at ll.1-7 (emphasis added).)  Eaton's specification does not disclose how much vitamin C (or other antioxidants) may be present without negatively affecting the vitamin supplement used in the claimed method.

## B.     Prior art vitamin supplements for treating psoriasis

The Examiner rejected Eaton's claims as anticipated by and/or obvious in view of five prior art references, taken alone or in some combination.[2]  (*See* A64-A72.)  Both before the Board (A82-A85) and in his opening brief to this Court (*see* Br. at 5-9), Eaton argued that none of these references discloses or renders obvious a vitamin supplement that "is essentially free of anti-oxidants," as required by independent claim 1.  In his brief to this Court, Eaton does not challenge the rejections made against his only other independent claim, claim 11.  For brevity's

---

[2]  In particular, claim 1 was rejected under 35 U.S.C. § 102(b) as anticipated by Jungkeit; claim 11 was rejected under 35 U.S.C. § 102(e) as anticipated by Meredith; claims 1 and 8-10 were rejected under 35 U.S.C. § 103(a) as obvious in view of Jungkeit and Mantynen; and claims 11 and 14 were rejected under 35 U.S.C. § 103(a) as obvious in view of Bereston, Plewig, and Mantynen.

5

sake, only the most relevant prior art references concerning the disputed limitation and the rejection of claim 1 are discussed below.

### 1.    Jungkiet

Jungkiet[3] concerns the use of a multivitamin preparation for the treatment of psoriasis. (*See* A300, ¶¶1-3.)  Jungkeit's multivitamin preparation contains folic acid, vitamin $B_{12}$, and vitamin $B_6$ in the ranges recited in claim 1.  (*See* A301, ¶5.) More specifically, Jungkeit's multivitamin preparation contains 500 µg folic acid, 150 µg vitamin $B_{12}$, and 20 mg vitamin $B_6$. *Id.*  Jungkeit's multivitamin preparation also contains 200 mg vitamin C and 50 mg vitamin E, both of which are antioxidants. *Id.*  Jungkeit provides working examples showing the effective treatment of psoriasis in patients treated with her multivitamin preparation.  (*See* A302-A304, ¶¶9-14.)  For example, one patient's "psoriasis receded perceptibly" within one-and-a-half months' of treatment, and the patient experienced "total healing" with twelve months' treatment.  (A303, ¶10.)  Another patient was "pain-free" and her feet were no longer "bloody and cracked" after about three months' treatment.  (A303, ¶12.)  And, another patient stopped having "intensely itchy skin rashes" on both arms after two months' treatment.  (A303-A304, ¶¶13, 14.)

---

[3]  DE Patent No. 10053155 A1 (A298-A305).  (A64-A72.)

6

### 2.    Mantynen

Mantynen[4] concerns methods for treating psoriasis with compositions

containing primrose oil, B-complex vitamins, and vitamin E.  (*See* A324, at col.3,

ll.32-41.)  Meredith's compositions contain 400-1,600 µg folic acid and 50-200 µg

total non-folic acid B-complex vitamins.  (A324, at col.3, ll.55-57.)  Mantynen

provides working examples showing the effective treatment of psoriasis in patients

treated with compositions containing *inter alia* 800 µg folic acid and 100 µg each

of vitamins $B_{12}$ and $B_6$, along with vitamin E.  (A325, at Examples 1-3.)  For

example, after only six weeks of treatment with Mantynen's composition, a patient

who "had been suffering from chronic severe psoriasis for 31 years" was

"substantially free from psoriatic lesions."  (A325, at col.5, ll.18-19, 43-45.)

Another patient with chronic, moderately severe psoriasis "experienced a 90%

reduction in the severity of his psoriasis" after a trial period of treatment.  (A325,

at col.5, ll.60-61, col.6, ll.9-20.)  And, another patient with moderately severe

psoriasis experienced the fading of thick psoriasis plaques to "flat pink patches"

after two months of treatment.  (A325, at col.6, ll.23-24, 36-40.)

---

[4]  U.S. Patent No. 6,107,349 (A322-A326).

7

## C.    The Board's decisions

The Board was unpersuaded by Eaton's sole argument that Jungkeit could not anticipate, and Jungkeit and Mantynen would not have rendered obvious, the method of claim 1 because the methods disclosed in each of these prior art references employ vitamin C or E.  (A3-A4, A9; *see also* A82-A84.)  According to Eaton, the phrase "essentially free of anti-oxidant" recited in claim 1 prohibits the use of vitamin C, which is disclosed in Eaton's specification as an antioxidant to be especially avoided.  (*See* A53-A54, A82-A84.)

The Board found that Eaton's specification defines the phrase "essentially free of anti-oxidant" as meaning that the vitamin composition used in the claimed method "should not contain an amount of antioxidants which would tend to damage or inactivate some of the vitamin $B_{12}$ and/or folic acid of the vitamin supplement."  (A9 (citing A65, A70-72); *see also* A4 (citing A286, at ll.6-10).)  Relying on this definition, the Board adopted the Examiner's construction of the phrase "essentially free of anti-oxidants" as permitting the use of antioxidants (including vitamin C and E) in amounts that do not interfere with the ability of the vitamin supplement used in the claimed method to effectively treat psoriasis.  (A4-A5, A9 (both citing A65, A70-A72).)  In particular, the Board found that the

phrase "essentially free of anti-oxidants" permits the amounts of antioxidants that "do not damage or inactivate the $B_{12}$ or folic acid." (A4.)

On request for rehearing, the Board expressly adopted the Examiner's finding that Jungkeit discloses that "B vitamins would effectively treat psoriasis even with vitamin C [or E] in the composition." (A4-A5, A9 (citing A65); *see also* A70-A72.) The Board found that given "the evidence that Jungkeit's composition containing 200 μg [*sic* mg] of vitamin C was effective to treat psoriasis, we continue to agree with the Examiner that claim 1, interpreted in light of the Specification, includes the composition Jungkeit described." (A5.) Thus, the Board found that the burden had shifted to Eaton to come forward with evidence that Jungkeit's compositions did not effectively treat psoriasis in order to prevail on his rebuttal argument. (A9 (citing *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1355 (Fed. Cir. 2003).) Because Eaton did not present a distinct argument related to the rejections relying on Mantynen (*see* A53-A54), the Board was similarly unpersuaded as to the rejections relying on that reference (*see* A5, A9).

9

## IV.    SUMMARY OF THE ARGUMENT

Substantial evidence supports the Board's findings and ultimate determination that the claimed method is anticipated or would have been rendered obvious by Jungkeit and Mantynen.  Independent claim 1 recites a method of treating psoriasis with a vitamin supplement containing folic acid, vitamin $B_{12}$ and vitamin $B_6$ that is "essentially free of anti-oxidants."  Jungkeit and Mantynen each disclose working examples showing the successful treatment of psoriatic patients with a vitamin supplement containing folic acid, vitamin $B_{12}$ and vitamin $B_6$ that also contain the antioxidants vitamins C and E, respectively.  Eaton does not dispute these facts.

Instead, Eaton's sole argument on appeal is that the Board erred by not construing the phrase "essentially free of anti-oxidants" to mean no antioxidant and/or no vitamin C.  Eaton's proposed construction runs counter to the definition of "essentially free of anti-oxidants" provided in his specification.  More specifically, Eaton's specification defines the phrase "essentially free of anti-oxidants" as meaning that the claimed vitamin composition "should not contain an amount of antioxidants which would tend to damage and inactivate some of the vitamin $B_{12}$ and/or folic acid of the vitamin supplement."  Although Eaton's specification is silent as to any particular amounts or ranges of antioxidants to be

10

avoided, his specification expressly teaches that "lower amounts" of antioxidants will not render the vitamin composition of the present invention ineffective or of reduced effectiveness. Eaton's specification also provides that antioxidants – including vitamin C – may be present during the preparation of the vitamin supplement of the claimed method provided that they are present at a level where they have virtually no effect on the supplement. Consistent with these teachings, the Board properly construed the phrase "essentially free of anti-oxidants" as permitting the use of vitamin C and other antioxidants in amounts that do not interfere with the ability of the vitamin supplement used in the claimed method to effectively treat psoriasis, such as those disclosed by Jungkeit and Mantynen.

If Eaton had wanted his claims to exclude antioxidants like vitamin C, he could have defined the phrase "essentially free of anti-oxidants" differently in his specification, amended his claims to expressly exclude antioxidants or provided specific ranges of antioxidants to be avoided. Having failed to do so, he cannot now avoid Jungkeit's and Mantynen's disclosure of the successful treatment of psoriatic patients using a vitamin supplement containing folic acid, vitamin $B_{12}$ and vitamin $B_6$, as well as vitamins C and E.

Finally, by failing to address the rejection of claim 11 and its dependents in his opening brief, Eaton has waived any challenge to the rejection now.

11

# V.   ARGUMENT

## A.   The standard of review

Eaton has the burden of showing that the Board committed reversible error. *In re Watts*, 354 F.3d 1362, 1369 (Fed. Cir. 2004). During examination, the USPTO must give claims their "broadest reasonable construction" consistent with the specification. *In re ICON Health & Fitness, Inc.*, 496 F.3d 1374, 1379 (Fed. Cir. 2007) (citing *In re Am. Acad. of Sci. Tech Ctr.*, 367 F.3d 1359, 1364 (Fed. Cir. 2004). This Court will affirm the Board's interpretation of disputed claim language if it is "reasonable." *Am. Acad. of Sci.*, 367 F.3d at 1364.

Anticipation is a question of fact, reviewed under the substantial evidence standard. *Rapoport v. Dement*, 254 F.3d 1053, 1058 (Fed. Cir. 2001); *In re Hyatt*, 211 F.3d 1367, 1371-1372 (Fed. Cir. 2000). Obviousness "is a legal conclusion based on underlying findings of fact." *In re Thrift*, 298 F.3d 1357, 1363 (Fed. Cir. 2002) (quoting *In re Kotzab*, 217 F.3d 1365, 1369 (Fed. Cir. 2000)). These factual determinations include, for example, what a reference teaches (*see Para-Ordnance Mfg., Inc. v. SGS Importers Int'l, Inc.*, 73 F.3d 1085, 1088 (Fed. Cir. 1995)).

This Court has defined substantial evidence as that which "a reasonable mind might accept as adequate to support a conclusion." *In re Gartside*, 203 F.3d 1305, 1312 (Fed. Cir. 2000) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197,

229-30 (1938).  "[W]here two different, inconsistent conclusions may reasonably be drawn from the evidence in record, an agency's decision to favor one conclusion over the other is the epitome of a decision that must be sustained upon review for substantial evidence."  *In re Jolley*, 308 F.3d 1317, 1329 (Fed. Cir. 2002).

## B.     Substantial evidence supports the Board's findings underlying its determination that Jungkeit and Mantynen anticipate or would have rendered obvious the claims on appeal

An invention is anticipated when all of its limitations are disclosed, either explicitly or inherently, in a single prior art reference.  *In re Schreiber*, 128 F.3d 1473, 1477 (Fed. Cir. 1997).  An invention is unpatentable as obvious "if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains."  35 U.S.C. § 103(a); *see also Gartside*, 203 F.3d at 1319.

As shown below, the Board correctly found that Jungkeit and Mantynen anticipate and/or would have rendered obvious the method of claim 1.  Because Eaton failed to separately argue against the anticipation of claim 11 by Meredith in his opening brief, Eaton has waived any such arguments.  *Aventis Pharma, S.A. v.*

*Hospira, Inc.*, 675 F.3d 1324, 1332-33 (Fed. Cir. 2012); *Becton Dickinson and Co. v. C.R. Bard Inc.*, 922 F.2d 792, 800 (Fed. Cir. 1990).

> **1.    The vitamin supplement of claim 1 permits antioxidants in amounts that do not interfere with the supplement's ability to treat psoriasis**

Claim 1 recites a method for treating a psoriatic patient with a vitamin supplement that contains folic acid, vitamin $B_{12}$, and vitamin $B_6$ that is "essentially free of antioxidants." (A87.) Eaton has chosen to distinguish his invention from the prior art solely based on the "essentially free of anti-oxidants" limitation recited in claim 1. (*See* Br. at 5-9.) According to Eaton, the phrase "essentially free of antioxidants" should be construed narrowly to "not have anti-oxidants of any kind added," particularly vitamin C. (Br. at 6, *see also* Br. at 5, 7-9.) While Eaton's proposed construction may be consistent with the meaning of the phrase "essentially free of anti-oxidants" taken in the abstract, Eaton's construction is not consistent with the definition provided in his specification which expressly allows for lower amounts of antioxidants.

Eaton's specification defines the phrase "essentially free of anti-oxidants" as meaning that the claimed vitamin composition "should not contain an amount of antioxidants which would tend to damage and inactivate some of the vitamin $B_{12}$ and/or folic acid of the vitamin supplement." (A286, at ll.6-10.) Although Eaton's

14

specification is silent as to any particular amounts or ranges of antioxidants to be avoided, his specification expressly teaches that "lower amounts of antioxidants [will] not render the vitamin composition of the present invention ineffective or of reduced effectiveness." (A286, at ll.8-10.) Eaton's specification also provides that antioxidants – including vitamin C – "may be present during the preparation of [the vitamin supplement of the claimed method] provided that they are removed afterward, either completely or at least to a level where they virtually have no effect on [it]." (A288, at ll.1-7.) Thus, Eaton's specification defines "essentially free of antioxidants" in functional terms that expressly permit "lower amounts of antioxidants," including vitamin C. (*See* A286, at ll.8-10.)

Consistent with these teachings, the Board construed the phrase "essentially free of anti-oxidants" as permitting the use of vitamin C and other antioxidants in amounts that do not interfere with the ability of the vitamin supplement used in the claimed method to effectively treat psoriasis. (A4-A5 ("essentially free of anti-oxidants" permits the use of such antioxidants "so long as they do not damage and inactivate some of the vitamin $B_{12}$ and/or folic acid."), A9 (both citing A65, A70-A72).)

The Board's construction is consistent with this Court's construction of the phrase "essentially free of" in other patent cases, where this Court has accorded the

15

phrase "essentially free of" as excluding all but trace amounts of a recited material only where such a construction is consistent with the patent's specification. *See*, *e.g.*, *In re Marosi*, 710 F.2d 799, 802 (Fed. Cir. 1983) (construing "essentially free of alkali metal" as not including compositions with "extremely low sodium content" where the applicant's specification states that the alkali content of the claimed zeolites is "only attributable to impurities of the chemicals used as starting materials"); *cf. Glaxo Group Ltd. v. Ranbaxy Pharm. Inc.*, 262 F.3d 1333, 1336-37 (Fed. Cir. 2001) (construing "essentially free of crystalline material" to mean a maximum crystalline content of up to 10% based on the similar crystalline content in the examples disclosed in the patentee's specification).

Here, Eaton chose to define the phrase "essentially free of" in a manner that permits the presence of antioxidants – including vitamin C – in "lower amounts" that do not render the vitamin supplement of claim 1 "ineffective." If Eaton had wanted his claims to be construed as now argued – *i.e.*, as permitting only trace amounts or no vitamin C – Eaton could have defined the phrase "essentially free of" in more restrictive or more precise terms before filing his specification, *e.g.*, by expressly limiting the antioxidants to trace amounts as in *Marosi*, or by providing specific amounts or ranges of antioxidants to be avoided. *See Marosi*, 710 F.2d at 802 (defining "essentially free of" as including only trace amounts in starting

16

materials). During examination, Eaton could have amended his claims to recite a vitamin supplement "free of antioxidant" or "free of vitamin C." Eaton could also have presented declaration evidence about what those of ordinary skill in the art consider to be an amount of antioxidant that would interfere with folic acid or vitamin $B_{12}$ activity. *See, e.g.*, 37 C.F.R. § 1.132. Having failed to take any of these actions, Eaton has failed to establish that the Board's construction of his claims was unreasonable. *See ICON*, 496 F.3d at1379 (USPTO to apply broadest reasonable construction of claims consistent with the specification).

### 2. Jungkeit and Mantynen each teach the effective treatment of psoriasis with a vitamin supplement containing folic acid, vitamin $B_{12}$, and vitamin $B_6$

Jungkeit and Mantynen demonstrate that vitamin supplements containing folic acid, vitamin $B_{12}$ and/or vitamin $B_6$ were known to effectively treat psoriasis and dandruff prior to Eaton's application. (*See* Br. at 5-9; *see also* A302-A304, ¶¶9-15; A315, at col.16, ll.22-24, 34-36; A325, at col.5, l.18 to col.6, l.67.) Moreover, as this Court found in a case very similar to the present appeal, vitamin supplements containing folic acid, vitamin $B_{12}$, and $B_6$ that are "essentially free of antioxidants" were known several years prior to Eaton's application. *See Upsher-Smith Labs., Inc. v. Pamlab, LLC*, 412 F.3d 1319, 1321 (Fed. Cir. 2005) (holding invalid as anticipated patent claims to a vitamin supplement composition

17

consisting of "folic acid, vitamin $B_{12}$, and vitamin $B_6$, . . said composition being essentially free of anti-oxidants" that issued in 1999 and 2003[5]).  By the 1960s, it was known that vitamin C had adverse effects on folic acid and vitamin $B_{12}$, and that vitamin compositions containing folic acid and vitamin $B_{12}$ lacking antioxidants were "more effective than similar compositions containing antioxidants."  *Upsher-Smith*, 412 F.3d at 1323.  By 1999, "[v]itamin supplement compositions consisting of vitamin $B_{12}$ and fol[ic acid] and essentially free of antioxidants were [also] known in the prior art."  *Id.*  Eaton does not dispute any of these facts.  (*See* Br. at 5-9.)

Instead, Eaton's sole argument on appeal is that Jungkeit and Mantynen cannot anticipate or would not have rendered obvious the claimed methods because Jungkeit and Mantynen disclose the use of a vitamin supplement containing vitamins C and E, which Eaton asserts are prohibited by his claims.  (Br. at 5-7.)  This argument fails for several reasons.

As explained *supra*, the Board correctly found that claim 1 permits antioxidants in amounts that do not render the vitamin supplement of the claimed methods ineffective.  (*See* A4, A9.)  Jungkeit and Mantynen each teach the

---

[5]  The claims held anticipated in *Upsher-Smith* issued in U.S. Patent Nos. 5,932,624 and 6,605,646 in 1999 and 2003, respectively.  *See Upsher-Smith*, 412 F.3d at 1320-21.  Eaton's application was filed on June 6, 2005.  (*See* A279.)

effective treatment of psoriasis with a vitamin supplement containing folic acid, vitamin $B_{12}$, and vitamin $B_6$ that also includes vitamin C or E, respectively. Jungkeit provides working examples showing the effective treatment of psoriasis in patients treated with a multivitamin supplement containing folic acid, vitamin $B_{12}$, vitamin $B_6$ in the ranges recited in representative claim 1, along with 200 mg vitamin C. (*See* A301-A304, ¶¶5, 9-14.) Jungkeit's results include "total healing" of chronic psoriasis in a patient who had failed other prior treatments (A303, ¶10); a marked reduction in pain as well as skin bleeding and cracking in another patient after about 3 months' treatment (A303, ¶12); and a cessation of "intensely itchy skin rashes" on both arms in yet another patient after 2 months' treatment (A303-A304, ¶¶13, 14). Mantynen similarly discloses working examples showing the effective treatment of psoriasis with compositions containing primrose oil, B-complex vitamins, and the antioxidant vitamin E. (*See* A325, at col.5, ll. 43-45, 60-61, col.6, ll.11-20, 23-24, 36-40). Thus, the vitamin C and/or E in Jungkeit's and Mantynen's vitamin supplements does not render their supplements "ineffective." Accordingly, the Board correctly found that Jungkeit's and Mantynen's vitamin supplements anticipate and/or would have made obvious the method of claim 1.

19

Because the Board's rationale concerning Jungkeit and Mantynen was based on the ability of their vitamin supplements to effectively treat psoriasis, the amount of vitamins C and E present in their supplements is irrelevant.  Thus, in contrast to Eaton's assertions (Br. at 6-7), whether Jungkeit's vitamin supplement contains 200 μg rather than 200 mg of vitamin C has no bearing on the Board's ultimate determination of unpatentability.  *See Watts*, 354 F.3d at 1369 (an appellant must show that an error affected the decision below to prevail on the basis of the error).  Moreover, by failing to raise the 200 μg versus 200 mg error to the Examiner (*see* A123-A125) or in either of its briefs to the Board (*see* A53, A54, A81, A84), Eaton waived his opportunity to raise it now.  *Watts*, 354 F.3d at 1367-68 (court's review of a Board decision limited to issues raised below).

For all these reasons, Eaton has failed to show any reversible error in the Board's decision.

## VI.    CONCLUSION

The Board's decision should be affirmed because (1) the Board's claim construction is reasonable, and (2) substantial evidence supports the Board's finding that the claimed method is anticipated and/or obvious in view of the cited prior art references.

Respectfully submitted,

June 4, 2013

_____/s/ Mary L. Kelly_____

NATHAN K. KELLEY
Deputy Solicitor

MARY L. KELLY
JOSEPH G. PICCOLO
Associate Solicitors

Mail Stop 8
P.O. Box 1450
Alexandria, VA  22313-1450
(571) 272-9035

*Attorneys for the Acting Director of
   the United States Patent and
   Trademark Office*

**CERTIFICATE OF SERVICE**

I certify that on June 4, 2013, I electronically filed the foregoing BRIEF FOR APPELLEE – ACTING DIRECTOR OF THE UNITED STATES PATENT AND TRADEMARK OFFICE using the Court's CM/ECF filing system.  Counsel for the Appellant was electronically served via e-mail.

_____/s/ Mary L. Kelly_____
Mary L. Kelly
Associate Solicitor

## __Independent claim 1__

1.     A method of treating psoriasis by administering to a person a vitamin supplement composition comprising

at least about 25 micrograms to about 2,200 micrograms of folic acid,

at least about 25 micrograms to about 2,500 micrograms of vitamin $B_{12}$, and

at least about 0.5 milligrams to about 20 milligrams of vitamin $B_6$,

wherein said composition is essentially free of anti-oxidants.

(A87.)